# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 23-2199V

| | |
|---|---|
| NASH JAMES DEVITA,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed:  October 6, 2025 |

*Jeffrey S. Pop, Jeffrey S. Pop & Associates, Beverly Hills, CA, for Petitioner.*

*Benjamin Rex Eisenberg, U.S. Department of Justice, Washington, DC, for Respondent.*

**FACT RULING ON ONSET**[1]

On December 29, 2023, Nash James Devita filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to him on September 19, 2022. Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find it more likely than not that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, as alleged.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Relevant Procedural History

Although the parties made an initial attempt to informally resolve this matter, they were ultimately unsuccessful. ECF Nos. 16-20. On January 10, 2025, Respondent filed a Rule 4(c) Report opposing compensation because onset of Petitioner's injury had not been shown to have occurred within 48 hours of vaccination, as required by the Table. ECF No. 21 at 7. Petitioner filed a Response to Respondent's Rule 4(c) Report highlighting entries from Petitioner's medical records supporting 48-hour onset and his SIRVA claim. ECF No. 22. The factual issue of onset is thus ripe for resolution.

## II. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the Petition by Vaccine Act Section 11(c)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014). The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42

Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III.   Relevant Factual Evidence

I make this finding after a complete review of the record, including all medical records, affidavits, and additional evidence filed, and in particular highlight the following:[3]

- Petitioner received a flu vaccine in his left deltoid on September 19, 2022, at his local pharmacy. Ex. 2 at 3.

- On October 17, 2022 (now 29 days post vaccination), Petitioner went to urgent care with "complaints of left upper arm pain which has subsequently spread to his left shoulder *over the last week*." Ex. 3 at 17 (emphasis added). Petitioner denied any accident or injury, but reported his only "correlation he has with his left arm is the flu vaccine that was administered a couple of weeks ago." *Id.* Petitioner stated his pain was "debilitating." *Id.* A physical examination showed a decreased range of motion ("ROM") due to pain. *Id.* The assessment included left upper arm and shoulder pain. *Id.* at 18.

- Petitioner sought care with an orthopedist on November 9, 2022, for a chief complaint of left shoulder pain. Ex. 4 at 2. Petitioner reported that he "began

---

[3] While I have reviewed all the evidence filed to-date in this case, evidence related to onset will be emphasized in this analysis.

- to note extreme pain and weakness following a flu shot in his shoulder." *Id.* Petitioner "state[d] this was performed in September and his pain has progressively worsened and has been noticing a gradual decrease in strength." *Id.* A physical examination showed "painful active ROM, limited by pain." *Id.* at 3. Petitioner received a cortisone injection into the left shoulder. *Id.* at 4.

- Later that month, on November 30, 2022, Petitioner had an appointment to establish care with a primary care physician ("PCP") and to discuss his left shoulder. Ex. 15 at 27. Petitioner reported that on "9/19/22 he had a flu shot in the left deltoid area and thinks they were a little to [sic] aggressive with the injection and went too deep." *Id.* He "report[ed] pain the next day, but the symptoms increased over the next few days." *Id.* The assessment included a reported tear of the tendon of the left upper extremity. *Id.* at 28.

- On January 5, 2023, Petitioner had his initial physical therapy ("PT") session. Ex. 5 at 31. Petitioner described the "nature" of his injury and reported "a flu vaccine last year in September which irritated the left shoulder. He states that he has been experiencing painful symptoms in the left shoulder since the injection." *Id.* The physical therapist noted that Petitioner had "decreased ROM, strength, joint mobility and increased pain." *Id.* at 31.

- In his declaration (drafted on January 23, 2024), Petitioner attests that the injection "was a little more painful than usual." Ex. 1 ¶ 8. He recalls that "[w]ithin a few hours after [his] flu injection, [he] noticed [his] left shoulder hurting more than normal post-vaccination." *Id.* ¶ 9. He explains that when his pain persisted, he used cold compresses and over-the-counter medications to improve his pain. *Id.* He also "thought that [his] symptoms would resolve with time." *Id.*

- Petitioner's wife also submitted a witness declaration on Petitioner's behalf, authored on August 26, 2024. Ex. 17. Petitioner's wife confirms that she was with Petitioner at the time of vaccination and received her flu shot at the same time. *Id.* ¶ 6. She attests that "[o]n the same night of the September 19, 2022 flu vaccination, [she] remember[s Petitioner] mentioning his arm pain." *Id.* ¶ 7. The next morning, Petitioner cried out in pain while dressing and told his wife that "he felt a lot of pain in his left shoulder." *Id.* ¶ 8. When she looked at Petitioner's arm at that time, she recalls "it was warm to the touch" and she "felt a knot in the area where he

4

> got the vaccination." *Id.* She explains that "[f]rom that point on, his left shoulder pain and problems only got worse." *Id.*

- No other medical record or declaration evidence bearing on the onset of Petitioner's shoulder injury has been submitted.

.
## IV. Finding of Fact Regarding Onset

A petitioner alleging a SIRVA claim must show that he experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that his pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)).

The totality of the evidence favors Petitioner's onset contentions. The aforementioned medical records, coupled with Petitioner's declarations, establish that Petitioner consistently reported to treaters onset close-in-time to vaccination, that he sought treatment within one month of the vaccination, and that he indeed was experiencing symptoms in the relevant timeframe.

The fact that Petitioner delayed treatment a bit (seeking care within less than a month of his vaccination (on October 17, 2022)) is not an obstacle to a finding of Table-consistent onset. Even *greater* delays have not undermined an otherwise-preponderantly-established onset showing consistent with the Table. *See,* e.g., *Tenneson v. Sec'y of Health & Hum. Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs.*, No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury).

The delay here was not nearly as long. And treatment delays are not otherwise *per se* evidence of a non-conforming onset. As I have previously noted, SIRVA petitioners often put off seeking shoulder-related care based on the reasonable assumption that the pain is normal and will resolve on its own over time, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain. This appears to have been the case here, with Petitioner explaining that he "thought that [his] symptoms would resolve with time" and thus tried unsuccessfully to treat his pain with over-the-counter remedies and cold compresses. *See,* e.g., Ex. 1 ¶ 9. The fact that Petitioner did not attend any intervening visits between vaccination and his first visit for left shoulder pain further supports the conclusion that his pain began close-in-time to vaccination.

In addition, Petitioner affirmatively and repeatedly linked his shoulder pain to the prior vaccination – beginning with the October 17th treatment encounter, at which time he correlated his left shoulder pain with "the flu vaccine that was administered a couple of weeks ago." Ex. 3 at 17. Although Petitioner also reported something that could be construed as a later onset ("over the last week"),[4] the fact that he linked the pain to his vaccination, and also in numerous other records was more precise about timing, does not defeat onset. To rule otherwise, the filed record would need to contain more inconsistencies or reports of pain beginning outside the Table's two-day window.

Other subsequent medical records corroborate the consistent contention made in Petitioner's and his wife's declaration – that his pain began within 48 hours of vaccination. *See,* e.g., Ex. 4 at 2 (a November 9, 2022 orthopedic note that he began to experience "extreme pain and weakness following a flu shot in his shoulder" that "was performed in September and his pain has progressively worsened"); Ex. 15 at 27 (a November 30, 2022 PCP record that on "9/19/22 he had a flu shot in the left deltoid area" and then had "pain the next day . . . the symptoms increased over the next few days."); Ex. 5 at 31 (a January 5, 2023 PT record noting he had "a flu vaccine last year in September . . . he has been experiencing painful symptoms in the left shoulder *since the injection*") (emphasis added).

### Conclusion

Petitioner has provided preponderant evidence that the onset of his shoulder pain occurred within 48 hours of vaccination.

I thus encourage the parties to make a final re-attempt at settlement. **Respondent shall file, by no later than <u>Wednesday, November 05, 2025</u>**, a status report concerning how he intends to proceed, including, if appropriate, whether he would like to file an amended Rule 4(c) Report or whether he is otherwise willing to entertain a renewed settlement demand from Petitioner.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[4] In addition, this one record suggests at worst that Petitioner's pain was spreading in her shoulder (which could be relevant to damages), but not that it only *started* at that later time.